1
2
3
4
5
6

IN THE UNITED STATES DISTRICT COURT

7

FOR THE EASTERN DISTRICT OF CALIFORNIA

8
9

MARIO R. MORENO,

10
                Plaintiff,                          CIV-S-01-0725 DFL DAD

11
        v.

12                                                  MEMORANDUM OF OPINION
                                                          AND ORDER
13   CITY OF SACRAMENTO, et al.,

14              Defendants.

15
16
17          This case arises from the January 2001 demolition of a

18   building owned by plaintiff Mario Moreno ("Moreno").  In June

19   2005, the case was tried to a jury on plaintiff's Fourth

20   Amendment, Fourteenth Amendment, and intentional infliction of

21   emotional distress claims.  During the trial, defendants made

22   several Rule 50 motions based on their arguments that: (1) the

23   individual defendants are entitled to qualified immunity; (2)

24   there is insufficient evidence against defendant Max Fernandez

25   ("Fernandez") to justify a verdict against him; (3) both the

26   individual defendants and the City of Sacramento (the "City") are

     entitled to state law immunity; and (4) there is insufficient

                                      1

evidence to justify an award of punitive damages.  (Mot. at 1-2.)
The court took these motions under consideration to be decided,
if necessary, after the verdict.

On June 10, 2005, the jury returned a verdict in favor of
Moreno and against defendants Joshua Pino ("Pino"), John Vanella
("Vanella"), Fernandez, and the City on all claims.  The jury
awarded compensatory damages in the amount of $330,000 for the
Fourteenth Amendment violation and $37,000 for the Fourth
Amendment violation.  Additionally, the jury awarded $200,000 in
punitive damages based on Pino's conduct and $150,000 based on
Vanella's conduct.  Judgment was entered in favor of Moreno on
June 13, 2005.

Defendants filed this motion on June 29, 2005, renewing
their request for judgment as a matter of law ("JMOL") under Rule
50 on the grounds raised during trial.  They also bring this
motion under Rule 60, arguing that the court erroneously entered
judgment before hearing additional evidence relating to the
qualified immunity defense.  Finally, to support their qualified
immunity argument, defendants seek to introduce additional
testimony from the individual defendants as to their knowledge of
the relevant law.

I.

A.  Timeliness of the Motion

As an initial matter, Moreno argues that defendants' renewed
Rule 50 motion is untimely because it was not made within ten
days of the entry of judgment, as required by Fed.R.Civ.P. 50(b).

1  (Opp'n at 1-3.)   In the absence of a timely renewal of a motion

2  for JMOL, the trial judge lacks the power to grant such relief.

3  Feathers v. Chevron U.S.A., Inc., 141 F.3d 264, 268 (6th Cir.

4  1998).   This holds true even if the court takes the pre-verdict

5  JMOL motion under advisement.   Johnson v. New York, N.H. & H.R.

6  Co., 344 U.S. 48, 51-53, 73 S.Ct. 125 (1952) (rejecting argument

7  that trial judge's express reservation of a decision on a Rule 50

8  motion relieves a party from duty under 50(b) to make a motion

9  for judgment after verdict); Warkentien v. Vondracek, 633 F.2d 1,

10 2 n.1 (6th Cir. 1980) ("[E]xpress reservation of a directed

11 verdict motion does not authorize a district court to direct a

12 verdict contrary to the jury's decision in the absence of a

13 motion for a judgment n.o.v."); 9 Moore's Fed. Practice § 50.41

14 (3d Ed. 2004).

15      Here, defendants filed their renewed Rule 50 motion on June

16 29, 2005, two days after the expiration of the ten-day period.

17 While admitting that the motion was filed beyond the ten-day

18 period, defendants contend that this motion is more appropriately

19 viewed as a Rule 60 motion seeking relief from a judgment or

20 order and, as such, is not untimely.   (Reply at 2.)

21 Specifically, defendants contend that the court entered judgment

22 prematurely because they were denied the opportunity to present

23 additional evidence following trial relating to the qualified

24 immunity defense.   (Id.)

25      Given defendants' confusion over the possibility of

26 introducing new evidence following trial, the court has

1  discretion under Rule 60 to vacate the entry of judgment and

2  consider defendants' motion.  <u>See</u> <u>Leichihman v. Pickwick Int'l</u>,

3  814 F.2d 1263, 1266 (8th Cir. 1987) (finding it within the

4  court's equitable power to vacate the entry of judgment arising

5  from mistake, and consider a motion for a new trial, where court

6  had ruled during trial that it would receive evidence on certain

7  issues after verdict was returned).  However, before a court does

8  so, a moving party must convince the court that "vacating the

9  judgment will not be an empty exercise."  <u>Local 59 v. Superline</u>

10 <u>Transp. Co.</u>, 953 F.2d 17, 20 (1st Cir. 1992).  For the reasons

11 given below, the court finds that defendants' Rule 50 motion

12 lacks merit and that the additional evidence they seek to present

13 is not relevant to the qualified immunity analysis.  Accordingly,

14 the court declines to vacate the judgment under Rule 60 and

15 consider defendants' untimely Rule 50 motion.

16 <u>B.  Rule 50 Motion</u>

17     A jury verdict cannot be disturbed on a motion for JMOL if

18 each necessary element of the verdict is supported by

19 "substantial evidence."  <u>Gilbrook v. City of Westminster</u>, 177

20 F.3d 839, 856 (9th Cir. 1999).  Substantial evidence is "such

21 relevant evidence as reasonable minds may accept as adequate to

22 support a conclusion even if it is possible to draw two

23 inconsistent conclusions from the evidence."  <u>Landes Contr. Co.</u>

24 <u>v. Royal Bank of Can.</u>, 833 F.2d 1365, 1371 (9th Cir. 1987).  In

25 short, JMOL should only be granted when "the evidence . . .

26 permits only one reasonable conclusion, and that conclusion is

4

1  contrary to that of the jury." <u>Bains LLC v. Arco Prods. Co.</u>, 405

2  F.3d 764, 774 (9th Cir. 2005), quoting <u>White v. Ford Motor Co.</u>,

3  312 F.3d 998, 1010 (9th Cir. 2002).

4        The court "should review all of the evidence in the record"

5  to determine if substantial evidence supports each element

6  necessary to the jury's verdict.  <u>Reeves v. Sanderson Plumbing</u>

7  <u>Prods., Inc.</u>, 530 U.S. 133, 150, 120 S.Ct. 2097 (2000).  When

8  examining the full record, "the court must draw all reasonable

9  inferences in favor of the nonmoving party, and it may not make

10  credibility determinations or weigh the evidence."  <u>Id.</u>

11        1.  <u>Qualified Immunity</u>

12        In reversing the court's earlier grant of summary judgment,

13  the Ninth Circuit addressed the issue of qualified immunity.

14  <u>Moreno v. City of Sacramento</u>, 2004 WL 1166530, at *1-3 (9th Cir.

15  2004).  The Ninth Circuit found that, on the facts then before

16  the court, Moreno raised a triable issue as to whether his

17  "clearly established" constitutional rights had been violated.

18  <u>Id.</u>  The court deemed the law clearly established on both

19  plaintiff's Fourth Amendment seizure and Fourteenth Amendment

20  procedural due process claims.  When defendants renewed their

21  request for qualified immunity following the Ninth Circuit's

22  ruling, the court refused to revisit the issue because of the

23  Ninth Circuit's ruling.  (O3/01/2005 Order at 2.)

24        Defendants now renew their request for qualified immunity,

25  relying upon nearly identical arguments to those raised in their

26  earlier motions.  (Mot. at 2-7.)  However, defendants have

identified no evidence presented at trial that calls into question either the jury's finding of constitutional violations or the Ninth Circuit's qualified immunity ruling.  Indeed, to the extent that there were facts in dispute that might alter the qualified immunity analysis, those facts have been determined against the defendants.  Accordingly, there is no basis for the court to revisit the qualified immunity issue.

Defendants argue that the Ninth Circuit's ruling does not foreclose the court from reconsidering the qualified immunity issue.  (Mot. at 2.)  They assert that, even where a constitutional violation is clearly established, the court must still inquire as to whether a reasonable officer would understand that to be the case on the particular facts of the case.  (Id. at 3.)  Accordingly, defendants argue that even though the Ninth Circuit found violations of clearly established constitutional law, that does not foreclose a finding by the court that a reasonable officer would not understand that his conduct violated the law on the specific facts presented in this case.  (Id.)

Additionally, they assert that the individual defendants' personal knowledge of the relevant law is pertinent to this qualified immunity inquiry.  (Reply at 2.)  They seek to introduce additional testimony from Pino, Vanella, and Fernandez on the following topics: (1) their general reliance on the city attorney for their knowledge of the law; (2) their efforts to keep up with developments in the law; and (3) their understanding and reading of the relevant case law.

1    Defendants' arguments are premised on a misunderstanding of
2  the qualified immunity inquiry.  The qualified immunity analysis
3  contains only two steps: (1) was there a constitutional
4  violation? and (2) if so, was the violation clearly established?
5  <u>Saucier v. Katz</u>, 533 U.S. 194, 200-01, 121 S.Ct. 2151 (2001).
6  Although defendants correctly note that a court must analyze
7  whether a reasonable officer would understand that his actions
8  were unconstitutional on the facts of the present case, that
9  inquiry is subsumed within the "clearly established" analysis.
10 As the Supreme Court has held, "the relevant, dispositive inquiry
11 in determining whether a right is clearly established is whether
12 it would be clear to a reasonable officer that his conduct was
13 unlawful in the situation he confronted."  <u>Id.</u>

14    Therefore, when the Ninth Circuit held that the
15 constitutional violations were clearly established, it found that
16 a reasonable officer, confronted with the alleged facts of this
17 particular case, would be on notice that his actions were
18 unconstitutional.  Accordingly, defendants' assertion that a
19 reasonable officer would not have understood that his actions
20 were unconstitutional on the specific facts is foreclosed by the
21 Ninth Circuit's ruling.

22    Defendants' request for additional testimony is equally
23 misplaced.  The qualified immunity analysis is objective, not
24 subjective.  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 817-18, 102
25 S.Ct. 2727 (1982).  The inquiry focuses on whether a reasonable
26 officer would understand that what he is doing violates the

7

1 constitution, and it incorporates "a presumptive knowledge of and

2 respect for 'basic, unquestioned constitutional rights.'"   <u>Id.</u> at

3 815.   Thus, the individual defendants' personal knowledge of the

4 law and their efforts to stay abreast of changes in the law is

5 irrelevant to this constitutional inquiry.   In fact, the Supreme

6 Court rejected a subjective component of the qualified immunity

7 inquiry for the very purpose of preventing the need for testimony

8 from individual officers as to their state of mind, subjective

9 motivation, and knowledge of the law.   <u>Id.</u> at 816-17.

10 Accordingly, the court finds it unnecessary to hear additional

11 testimony from the individual defendants.

12      For the above reasons, defendants' qualified immunity

13 arguments lack merit.

14      <u>2.  Defendant Fernandez</u>

15      Defendants also argue that Fernandez cannot be liable for

16 either the Fourth or Fourteenth Amendment violations because: (1)

17 he was not personally involved in the actions leading to the

18 demolition or the destruction of Moreno's personal possessions;

19 and (2) no reasonable jury could find Fernandez liable for his

20 supervision of Pino and Vanella or for his role in creating the

21 City's demolition policies.  (Mot. at 8.)  The court disagrees.

22 While, as Moreno concedes, there was no evidence presented that

23 Fernandez personally participated in the events leading to the

24 demolition and seizure, there was sufficient evidence for the

25 jury to find Fernandez personally liable for his actions as a

26 supervisor.

1    A supervisor may be held personally liable under § 1983 if
2  there exists either: (1) personal involvement in the
3  constitutional deprivation; or (2) a sufficient causal connection
4  between the supervisor's wrongful conduct and the constitutional
5  violation.  Redman v. County of San Diego, 942 F.2d 1435, 1446
6  (9th Cir. 1991), quoting Hansen v. Black, 885 F.2d 642, 646 (9th
7  Cir. 1989).  A causal connection can be established by showing
8  that the supervisor set "in motion a series of acts by others
9  which the actor knows or reasonably should know would cause
10 others to inflict the constitutional injury."  Id., quoting
11 Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978).  Thus,
12 supervisory liability can be imposed against an official for "his
13 own culpable action or inaction in the training, supervision, or
14 control of his subordinates," or "for conduct that showed a
15 reckless or callous indifference to the rights of others."  Larez
16 v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991)
17 (internal citations omitted).

18     Here, evidence at trial showed that Fernandez did not
19 formally review the performance of Pino and Vanella, insure that
20 they received any training, or check their work on a regular
21 basis.  (Opp'n at 17-18.)  Furthermore, there was evidence that
22 Fernandez helped create and implement the form repair agreement
23 at issue in this case, but did not ensure that the agreement was
24 used consistently with due process requirements.  (Id. at 18.)
25 There was also evidence that Fernandez, Pino, and Vanella were
26 confused by their own procedures and that these procedures were

1 applied inconsistently.  In short, based on the evidence

2 presented at trial, a jury could find that: (1) Fernandez created

3 the policy that, in part, led to the violation of Moreno's

4 constitutional rights; (2) the officials under his control lacked

5 clear direction on the City's procedures for ensuring against due

6 process and Fourth Amendment violations; and (3) Fernandez failed

7 to provide adequate training and supervision to Pino and Vanella.

8 Such evidence is sufficient to support the jury's finding of

9 liability against Fernandez.  Accordingly, defendants' argument

10 with regard to Fernandez is without merit.

11      3.  State Law Immunities

12      In addition to moving for qualified immunity, defendants

13 also renew their request for state law immunity based on: (1)

14 discretionary immunity under Cal. Gov't Code § 820.2; (2) law

15 enforcement immunity under Cal. Gov't Code § 820.4; and (3)

16 public entity immunity under Cal. Gov't Code § 815.2.  (Mot. at

17 9-10.)  Defendants simply reiterate arguments the court rejected

18 in its March 1, 2005 summary judgment ruling.  (O3/01/2005 Order

19 at 4-8.)  Defendants provide no basis for revisiting the court's

20 earlier ruling on these issues, as they do not challenge the

21 sufficiency of the evidence supporting the intentional infliction

22 of emotional distress claim.  The court finds there was

23 sufficient evidence from which a jury could find that Pino and

24 Vanella acted improperly, and without due care, in the manner in

25 which they carried out the demolition and destroyed Moreno's

26 personal possessions.  Accordingly, defendants' renewed request

1  for state law immunity lacks merit.

2      4.  Punitive Damages

3      Finally, defendants challenge the jury's award of punitive

4  damages, arguing that there was insufficient evidence at trial to

5  support the award.[1]  (Mot. at 10-12.)  However, the court finds

6  the award is supported by substantial evidence and is not

7  unconstitutionally excessive.

8      With regard to the sufficiency of the evidence, the jury was

9  instructed that, to award punitive damages, they must find that

10  "the conduct of the defendant under consideration was malicious,

11  or in reckless disregard of the plaintiff's rights."  Defendants

12  argue that there was insufficient evidence to support such a

13  finding because Pino and Vanella were simply enforcing the city's

14  statutes, not acting with deliberate indifference or intentional

15  malice.  (Id. at 11.)  Moreover, they note that they warned

16  Moreno on several occasions of their intent to demolish his

17  building if certain repairs were not made.  (Id.)

18      The court finds the evidence sufficient to support the

19  punitive damages award.  Based on the evidence presented at

20  trial, a jury could reasonably have found that Pino: (1) took

21

22

23      [1]  Defendants state that they are challenging the punitive
damages award based upon the alleged insufficiency of the
24  evidence.  (Mot. at 10.)  However, they base their argument
entirely upon an analysis of the factors identified in BMW v.
25  Gore, 517 U.S. 559, 116 S.Ct. 1589 (1996), which are used only to
determine whether a punitive damages award is unconstitutionally
26  excessive.  The court will assume that defendants are challenging
the award on both the "insufficient evidence" and
"unconstitutionally excessive" grounds.

steps to demolish the building although he had never seen it and had not inspected it; (2) demolished the building even though Vanella, the inspector, did not recommend demolishing it and had continued to approve repairs in the weeks prior to demolition; (3) intentionally misled the City Attorney's Office to gain approval for demolishing the building by incorrectly representing that an inspection had been done three days earlier and by including no photographs of the building taken after 1999; (4) told the jury that he had performed the final investigation himself when that was not true; and (5) intentionally misled Deputy City Attorney Wang on the day of the demolition by denying any knowledge of the status of the demolition.   (Opp'n at 12-16.) Likewise, a jury could reasonably have found that Vanella:   (1) destroyed Moreno's personal property with knowledge that it remained in the building; and (2) participated in the demolition of the building, and thus the personal property, despite his own belief that the building was not "dangerous."   Such facts are sufficient to support a finding of intentional malice or deliberate indifference against Pino and Vanella.

For similar reasons, the punitive damages award is not unconstitutionally excessive.   The Supreme Court has articulated three guideposts for determining whether a punitive damages award is unconstitutionally excessive: (1) the degree of reprehensibility of the defendants' conduct; (2) the disparity between harm or potential harm suffered by the plaintiff and his punitive damages award; and (3) the difference between this

1 remedy and the civil penalties authorized or imposed in

2 comparable cases.  <u>BMW v. Gore</u>, 517 U.S. 559, 574-75, 116 S.Ct.

3 1589 (1996).  The most important of these factors is

4 reprehensibility.  <u>Id.</u> at 575.

5    Defendants base their entire argument on the

6 reprehensibility factor.  (Mot. at 11-12.)  In determining the

7 reprehensibility of the conduct, a court must consider whether:

8
      the harm caused was physical as opposed to economic;
9      the tortious conduct evinced an indifference to or a
      reckless disregard of the health and safety of others;
10     the target of the conduct had financial vulnerability;
      the conduct involved repeated actions or was an
11     isolated incident; and the harm was the result of
      intentional malice, trickery, or deceit, or mere
12     accident.

13 <u>State Farm Mut. Auto. Ins. Co. v. Campbell</u>, 538 U.S. 408, 419,

14 123 S.Ct. 1513 (2003).  Based on these factors, defendants

15 contend that Pino's and Vanella's conduct was not reprehensible.

16 (Mot. at 11-12.)

17    However, as discussed above, sufficient evidence was

18 presented from which a jury could find that Pino and Vanella

19 acted with intentional malice.  Moreover, the ratio of the

20 punitive damages award to the compensatory damages award weighs

21 heavily in favor of finding the award not excessive.  For both

22 Pino and Vanella, the ratio is less than 1:1.  While refusing to

23 establish a solid line, the Supreme Court has held that

24 single-digit multipliers are more likely to comport with due

25 process than higher multipliers.  <u>State Farm</u>, 538 U.S. at 425.

26 Defendants have a heavy burden, therefore, of showing that a less

than 1:1 ratio is excessive.  Defendants fail to meet this
burden.

                                III.

     For the foregoing reasons, defendants' Rule 50 motion and
their request to present additional evidence is without merit.
Accordingly, the court declines to exercise its discretion to
vacate the entry of judgment under Rule 60 and consider
defendants' untimely Rule 50 motion.  Therefore, defendants' Rule
50 and Rule 60 motions are DENIED.

     IT IS SO ORDERED.

Dated: 8/19/2005


                              _____
                              DAVID F. LEVI
                              United States District Judge