IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARIO MORENO,

     Plaintiff,

     v.

CITY OF SACRAMENTO, MAX
FERNANDEZ, JOSHUA PINO, JOHN
VANELLA, UNKNOWN POLICE
OFFICERS, 1-10,

     Defendants.

CIV-S-01-0725 DFL DAD

MEMORANDUM OF OPINION
AND ORDER

Plaintiff Mario Moreno obtained a favorable jury verdict in his civil rights action against the City of Sacramento and three of its employees.  He now seeks to recover "a reasonable attorney's fee" for work performed by attorneys Andrea Miller ("Miller") and Steven P. Belzer ("Belzer") as provided by 42 U.S.C. § 1988.  For the reasons discussed below, the court awards Moreno: (1) $428,053.00 in attorney's fees and $39,680.12 in expenses for work Miller and her staff performed; (2) $20,594.33 in costs; and (3) $82,707.50 in attorney's fees for work Belzer

1

and his paralegal performed.

I.

Following a one-week trial, a jury found that the City of Sacramento and three of its employees violated Moreno's civil rights by seizing and destroying his property without affording him due process of law.  Miller and Belzer represented Moreno at trial and in the lengthy pre-trial proceedings.  Following trial, Moreno submitted: (1) a bill of costs totaling $26,211.80; (2) a motion for fees for Miller totaling $689,377.07;[1] and (3) a motion for fees for Belzer totaling $115,800.00.  (Miller Mot. at 17; Belzer Mot. at 16.) Defendants objected to dozens of items listed in Moreno's bill of costs and to parts of both requests for attorney's fees.  (Obj. at 1-6; Miller Opp'n at 1-10.)

II.

A.  <u>Costs</u>

Fed.R.Civ.P. 54 provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court directs otherwise."  Local Rule 54-292(f) provides a list of "items taxable as costs."  These include clerk's fees, fees for service of process, court reporter's fees, docket fees, fees for copying necessary documents, bond premiums, witness per diem, and costs on appeal.  <u>See</u> <u>also</u> 28 U.S.C. § 1920.

Defendants object to 52 items on Moreno's bill of costs.  In

---

[1] Moreno raised this total to $704,858.07 in his Reply to Defendants' Opposition to Plaintiff's Motion for Attorney's Fees because he underestimated the amount of time Miller and her staff would spend on post-trial motions.

response, Moreno withdrew the following expenses and added them to his Motion for Attorney's Fees for Miller: (1) $1,672.50 in expert witness fees; (2) $600 in non-testifying witness fees; (3) $105 for the Civil Appeals Docketing Statement filing fees; (4) $26.29 in travel fees; and (5) any expenses listed on the bill of costs that are denied by the court.  (Resp. at 4,7.) Consequently, Moreno requests an award of $23,808.01 in costs.

1.   State Court Filing Fees

Defendants object to $322.80 in state court filing fees because this case was not removed from state court.  (Obj. at 1.) This expense is not taxable as a cost.  See Pershern v. Fiatalis N. Am. Inc., 834 F.2d 136, 140 (8th Cir. 1987).  Moreno's request to tax this expense as a cost is DENIED.

2.   Fee for Expert Witness Subpoena

Defendants object to $35 in costs for serving a subpoena on Franz Broker ("Broker"), an expert witness who did not testify at trial.  (Obj. at 1.)  Moreno claims that Broker's testimony would have been similar to another expert's testimony and because the court limited the time allotted for trial, Moreno decided not to call Broker.  (Resp. at 2.)  Moreno concedes that witness fees for Broker are improper, but argues that serving him with a subpoena was necessary.  (Id.)

The expense of serving Broker properly would be considered a cost had he testified.  Local Rule 54-292(f)(2).  Since he did not testify, however, the necessity of serving him is not apparent, particularly given that Broker's testimony was

corroborative at best, cumulative at worst.  Moreno's argument

that he was only prevented from calling Broker because of the

time limits is unconvincing because Moreno knew this information

two weeks before he served Broker.  (5/5/2005 Minute Order.)

Moreno presents no other justification for this cost.  Moreno's

request to tax this expense as a cost is DENIED.

    3.  <u>Remaining Objections</u>

    Defendants' remaining forty-five objections can be divided

into four groups: (1) costs related to law and motion

transcripts; (2) deposition costs; (3) copy and exemplification

costs; and (4) internal copying costs.

    a.  <u>Costs Related to Law and Motion Transcripts</u>

    Defendants object to $45.50 in law and motion transcripts.

(Obj. at 1-2.)  Defendants contend that these transcripts were

"not necessarily obtained for use in this case."  (<u>Id.</u>)  Moreno

argues that: (1) the only use for such transcripts was to

prosecute this case; (2) ordering the transcripts was

necessitated by defendants' actions; and (3) defendants listed

similar transcripts on the bill of costs which they submitted

earlier in the case.  (Resp. at 2.)  Transcripts are taxable as

costs.  Local Rule 54-292(f)(3).  These appear to be legitimate

requests, therefore, Moreno's request to tax this expense as a

cost is GRANTED.

    b.  <u>Deposition Costs</u>

    Defendants object to a total of $475 in postage and handling

for transcripts, $20 in ASCII disks, $34.75 in "certified

4

question" charges, and $20 in fees for condensed transcripts. (Obj. at 2-3.)  These charges are related to handling some 32 depositions.  (Id.)  These are appropriately taxable as costs. Local Rule 54-292(f)(3).  Moreno's request to tax these expenses as a cost is GRANTED.

Defendants object to $2,059.80 in Realtime/LiveNote charges arising from the 32 depositions.  (Obj. at 2-3.)  Moreno argues that the Realtime/LiveNote service alleviates the need to request expedited transcripts or to reorder a lost transcript.  (Resp. at 3.)  However, expedited and replacement transcripts are not necessary costs.  These services appear primarily designed to facilitate trial preparation by making transcripts more functional.  They are billed separately from, and are in addition to, the fee for the actual deposition transcript.[2]  Consequently, although they are billed by the court reporter, they are not the "court reporter's fees" described in the local rule.  Moreno's request to tax this expense as a cost is DENIED.

     c.  <u>Copy and Exemplification Costs</u>

Defendants object to including expenditures for six electronic exemplifications in the award for costs.[3]  (Obj. at 4.)  Moreno contends that these electronic exemplifications

---

[2] Each deposition transcript bill has a separate charge for the "Original & One Certified Copy."  There is no indication that this charge is discounted because of the Realtime/LiveNote purchase.

[3] These expenses were for creating, copying, or enhancing CDs, videotapes, photographs, and cassettes.  (Id.)

should be included in the cost award because they are related to the case.[4]  Of the six receipts challenged by defendants, only one specifically indicates what is contained on the electronic exemplification.  Three of the other five only state that they are for the Moreno case.  The other two receipts reflect a $17.65 charge for photograph development at Raley's Supermarket and a $239.10 charge for transferring media stored on video tapes and cassettes to DVDs and CDs, respectively.

Expenses related to exemplifications "necessarily obtained for use in the case" are taxable as costs.  Local Rule 54-292(f)(5).  Moreno has the burden of showing that these were necessary expenses.  Moreno has put forth no evidence other than an unlabeled receipt to demonstrate his need to use the photographs at trial.  This is an insufficient showing.  Moreno's request to tax this expense as a cost is DENIED.

The decision to transfer media from an analog to a digital format appears to have facilitated presentation of the case by permitting counsel to store all exhibits on a single computer from which they could be shown or played to the jury.  In the context of a complex trial, such a cost is fairly described as necessary.  Moreno's request to tax this expense as a cost is GRANTED.  Because they appear to have been used at trial, Moreno's request to tax the four remaining electronic

[4]Specifically, the exemplifications included community and city council meetings and the video of the demolition.  There were also charges for clean up and enhancement, transcription, and for transferring data between mediums.  (Resp. at 4.)

1  exemplifications as a cost is GRANTED.

2      Defendants object to $378.88 in color copies.  (Obj. at 5.)

3  Moreno indicates that these documents were used to make the four

4  exhibit books used at trial.  (Resp. at 5.)  This is an

5  appropriate exemplification under Local Rule 54-292(f)(5).

6  Moreno's request to tax this expense as a cost is GRANTED.

7      Defendants object to $352.44 in copies.  (Obj. at 5.)

8  Defendants point out that: (1) the receipt lacks any indication

9  that the documented expense relates to this case; (2) there is no

10 indication of why the copies were made; and (3) there is no

11 corresponding line item in the detail at pages 58-62 of the bill

12 of costs to account for this charge.  (Id.)  Moreno contends that

13 "[i]t is clear" that these are "case related evidentiary

14 photographs relevant to testimony for trial."  (Resp. at 5.)

15     The court disagrees.  The handwriting on the receipt

16 reproduced in the bill of costs is mostly illegible.  (Bill of

17 Costs ("BOC") at 75.)  It is impossible to tell the content,

18 date, and purpose of the photocopies.  Moreover, Moreno does not

19 address this specific receipt in his response.  (Resp. at 5.)

20 Instead, he provides a general statement equating this receipt to

21 four other documents listing charges.  (Id.)  Those four other

22 documents, however, are not receipts.  More importantly, those

23 documents clearly indicate Moreno's case number and provide

24 descriptions of the charges.  They share no similarities with

25 this receipt.  Moreno has not shown that these copies were

26 necessary for this case.  Moreno's request to tax this expense as

a cost is DENIED.

Defendants object to four sets of charges that are without supporting receipts or other documentation. (Obj. at 5.) Moreno contends that these documents reveal that each listed charge is related to "evidentiary photographs relevant to testimony for trial." (Resp. at 5.) Although Moreno fails to provide a receipt for these charges, most are described and all indicate that they were used for this case. (See BOC at 77-80.) Moreno's request to tax these expenses as a cost is GRANTED because: (1) the descriptions appear relevant; (2) the costs appear reasonable per the description; and (3) there is no indication that these services were double-billed.

Finally, defendants object to: (1) an incorrectly paid bill; (2) three charges that are not reflected as line items in the details at pages 58-62; and (3) $55.90 for photocopies of the state court file of this case. (Obj. at 5-6.) Moreno contends that the alleged incorrectly paid bill was appropriately documented and paid. (Resp. at 5.) The court finds that the bill is documented and was related to a necessary exemplification. (BOC at 81-82). Moreno's request to tax this expense as a cost is GRANTED.

Moreno contends that the expense of copying the superior court file is taxable as a cost because defendants attempted to tax this expense as a cost. (Id. at 5-6.) Moreno does not aver that he used the documents at trial or that they were necessary for his case. Because only necessary exemplifications are

properly taxable as costs, the court DENIES Moreno's request to tax the expense of copying the state court file as a cost.

Moreno does not address the other three charges.  Therefore, Moreno's request to tax these expenses as costs is DENIED.

### d.   Internal Copying Fees

Defendants object to $3,979.25 in "internal copying" fees. Defendants allege that the copies were made for the convenience of counsel, that the tabulation in the bill of costs makes no reference to this case, and that Moreno failed to identify what the copies were for on the bill of costs tabulation.  (Obj. at 6.)  Moreno argues that such fees are proper and that the $3,979.25 expense is limited to those copy jobs on the bill of costs tabulation that included a description and were identified with this case.  (Resp. at 6.)   Moreno does not allege that the copies were not for his counsel's convenience.  Instead, he argues that the correct test is whether they were "necessarily obtained for use in the case."  Local Rule 54-292; 28 U.S.C. § 1920(4); Haagen Dazs Co., Inc. v. Double Rainbow Gourmet Ice Creams, Inc., 920 F.2d 587 (9th Cir. 1990).

In Haagen Dazs, the court of appeals upheld a district court's decision to award costs for half of 320,000 copies made in the course of litigation.  920 F.2d at 587.  The decision was based on a finding that these copies were necessarily for use in the case even though none were introduced at trial.  Id. Moreno's original bill of costs reflects that he pared down the amount of copies for which he seeks a cost award from $6,467.75

to $3,979.25.  Each copy job in his request is linked to this case and has a description.  (<u>See</u> BOC at 100-11.)  Moreno's request to tax this expense as a cost is GRANTED.

For the reasons stated above, the correct amount of costs to be awarded is $20,594.33.

B.   <u>Attorney's Fees</u>

As the prevailing party in a 42 U.S.C. § 1983 action, Moreno seeks attorney's fees and reasonable expenses under 42 U.S.C. § 1988.  Absent special circumstances, the court should award Moreno a reasonable attorney's fee.  <u>See</u> <u>Hensley v. Eckert</u>, 461 U.S. 424, 429, 103 S.Ct. 1933 (1983).

Moreno requests a total of $704,858.07 in fees and expenses for Miller.  (Miller Reply at 16.)  He alleges that he has accrued pre-trial and trial fees for Miller in the amount of $637,163.75, ancillary expenses in the amount of $35,842.82, and post-trial fees in the amount of $31,851.50.  (<u>Id.</u>)  In addition, Moreno requests an additional $5,249.38 in ancillary expenses that were improperly listed as costs.

Moreno requests $115,800.00 in fees for Belzer.  (Belzer Mot. at 16.)  He alleges that he has accrued pre-trial and trial fees for Belzer in the amount of $113,520.00 and fees for the motion for fees in the amount of $2,280.00.  (<u>Id.</u>)

Defendants do not contest: (1) that Moreno is entitled to attorneys fees and reasonable expenses under 42 U.S.C. § 1988; (2) the reasonableness of the $35,842.42 requested as "Ancillary Expenses" for Miller; (3) the reasonableness of the $16,370.00

originally requested for post-trial fees for Miller; or (4) the reasonableness of the $2,280.00 requested for the motion for fees for Belzer.  (Miller Opp'n at 1.)  Defendants do contest the amount of pre-trial and trial fees requested for Miller and Belzer.  (Id.)

The proper place to start for determining a reasonable fee is with the lodestar amount.  Hensley, 461 U.S. at 433.  The lodestar is calculated by multiplying the total number of hours reasonably expended by a reasonable hourly rate.  Id.  However, the court will "exclude from this initial fee calculation hours that were not 'reasonably expended.'"  Id. (citing S.Rep. No. 94-1011, p. 6 (1976)).

    1.   <u>Hours Reasonably Expended</u>

Miller provides billing records and rates for herself and four attorneys, three paralegals, and two law clerks in her office.  (Miller Decl. Ex. 2.)  Excluding post-trial work, Miller and her staff billed a total of 2,805.45 hours to this case.  (Id.)  Because not all of these hours were "reasonably expended," Miller reduced this total by 9.3% to 2,502.05 hours.[5]  (Id. at 3.)

Belzer provides billing records and rates for himself and one paralegel.  (Belzer Decl. Exs. 1, 2.)  Belzer spent a total of 392.4 hours on this case.  (Id. Ex. A.)  Belzer reduced that

---

[5] The total number of hours billed by attorneys was reduced 6% (from 2125.9 to 1996.5).  The total number of hours billed by paralegals and law clerks was reduced 25% (from 679.55 to 505.55).

total by 18.3 hours (4.7%) to 374.1 hours to account for any time
not reasonably expended. (Belzer Mot. at 6.) Belzer's paralegal
spent 18.9 hours on this case. (Belzer Decl. Ex. 2.) Belzer
reduced that total by 1.7 hours (9%) to 17.2 hours to account for
any time not reasonably expended. (Belzer Mot. at 6.)

Defendants argue that the number of hours should be reduced
further because: (1) Moreno was unsuccessful on numerous causes
of action; (2) Miller and her staff spent too much time on
certain aspects of the litigation; (3) Belzer and Miller both
billed for work that only one needed to do; and (4) defendants'
counsel billed 1300 fewer hours than Moreno's counsel.

a.   <u>Moreno's Success on his Causes of Action</u>

Moreno alleged six causes of action in the complaint: (1)
unlawful search in violation of the 4th Amendment; (2) denial of
procedural due process in violation of the 14th Amendment; (3)
denial of due process in violation of Article 1 § 7 of the
California Constitution; (4) unlawful taking of property in
violation of the 5th Amendment; (5) intentional infliction of
emotional distress; and (6) negligent infliction of emotional
distress. (Compl. ¶¶ 32-61.) At trial, Moreno prevailed on: (1)
his procedural due process claim; (2) his Fourth Amendment claim
concerning seizure of his personal property; and (3) his claim of
intentional infliction of emotional distress. (Special Verdict
Form at 1-3). In addition to $367,000 in compensatory damages,
the jury awarded Moreno $350,000 in punitive damages. (<u>Id.</u> at
4.)

Defendants argue that Moreno was "unsuccessful on numerous causes of action." (Miller Opp'n at 3.) These include a takings claim under the 5th Amendment, a substantive due process claim, a claim under the California Constitution, and an illegal search claim, relating to entry into Moreno's building. (Id.) Defendants make no recommendation as to how the court should adjust the hours as a result of these "unsuccessful" causes of action. (Id.)

In general, a prevailing party should not recover attorney's fees for work expended on a claim that is unsuccessful and unrelated to the successful claims. Hensley, 461 U.S. at 435. However, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation." Id. "In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Id.

Moreno obtained excellent results in this case. He received a full compensatory award plus an almost equal amount in punitive damages. Even if he had been successful on every cause of action, he would likely not have received a better financial result. Because "the most critical factor [in determining a reasonable attorney's fee] is the degree of success obtained," neither Miller's nor Belzer's number of billable hours will be reduced because Moreno did not prevail on all of his claims. Moreover, all of the claims are significantly intertwined and

focus on the same series of events.  It would be exceedingly difficult to identify any time spent on any one claim that would not contribute to the prosecution of all other claims.

      b.  <u>Miller's Time</u>

Defendants argue that some of the following hours billed by Miller are excessive and should be stricken: (1) 48.4 hours for the complaint; (2) 137.3 hours for "investigation"; (3) 75 hours for summarizing 3,000 pages of written discovery; (4) 275.2 hours for depositions; (5) 227.9 hours for research; (6) 135.1 hours for defendants' motion for summary judgment; (7) 269.3 hours for the appeal; and (8) 607.3 hours for trial preparation.  (Miller Opp'n at 3-6.)

      i.  <u>The Complaint</u>

Miller seeks compensation for 48.4 hours spent drafting the complaint and analyzing defendants' answer.  The complaint is fourteen pages long, pieces together almost thirty paragraphs of factual information, and sets forth six causes of action.  Some of the claims presented novel legal theories.  The answer is thirteen pages long, addresses the assertions listed in the complaint, and sets forth thirty-eight affirmative defenses. Defendants argue that these hours should "be reduced by at least fifty percent" because "a substantial portion" were "ultimately unsuccessful."  (<u>Id.</u> at 3.)

Moreno was unsuccessful on two of his six claims.  However, as described above, his results were excellent.  Under <u>Hensley</u>, Miller should be compensated for all hours "reasonably expended

on the litigation." 461 U.S. at 435. The court finds that the time Miller spent on the complaint and answer was reasonable, therefore she is entitled to fees for all of this time.

### ii. Investigation

Miller seeks compensation for 137.3 hours of investigation. (Miller Decl. ¶ 6(c).) This effort included collecting information regarding the City's demolition practices from public sources, interviewing similarly situated individuals, and discussing the case with Moreno. (Id.) Defendants argue that these activities were "unnecessary and non-productive" because they "lent little" to plaintiff's ultimate recovery. (Miller Opp'n at 4.) Defendants support this assertion by pointing out that the evidence from the interviews with similarly situated individuals was "admitted on an extremely limited basis." (Id.) Defendants request that this amount of time be reduced by fifty percent. (Id.)

Moreno argues that he was justified in finding additional witnesses to testify about "the depth and breadth" and "institutional habituation" of the City's malfeasance because: (1) Rule 11 required him to find out if the City's behavior in this case was an aberration; and (2) had the trial not been truncated, these witnesses would have testified and bolstered his claim for punitive damages. (Reply at 4.) Although undertaking an effort to check Moreno's story and develop a punitive damages theory was appropriate, Moreno spent an unreasonable amount of time engaged in this activity. This time should be reduced by

50%.  Miller will be compensated for 68.7 hours of time instead of 137.3 hours.

### iii. <u>Written Discovery</u>

_____  Miller seeks compensation for 127.1 hours of time spent preparing written discovery and summarizing approximately 3,000 pages of documents.  (Miller Decl. ¶ 6(d).)  Miller applied the 40 pages per hour standard established by the California Supreme Court, even though this can result in a significant reduction in the total number of billable hours for summarizing documents.  (<u>Id.</u>)  She avers that she personally summarized the documents to avoid duplicating work.  (<u>Id.</u>)

Defendants only challenge the 75 hours allotted to document summaries.  (Miller Opp'n at 4.)  Defendants argue that Miller should not have summarized the documents herself.  (<u>Id.</u>)  Instead, defendants claim she could have "substantially reduced the burden on both herself and the ultimate fee award by allowing paralegals to do that work."  (<u>Id.</u>)  Defendants request that this amount of time be reduced by fifty percent.  (<u>Id.</u>)

Miller's choice to conduct the document summaries herself is reasonable.  It not only prevented any duplication of work, but it likely assisted her in becoming intimately familiar with the information in the summarized documents.  This familiarity was a significant asset to her at tiral.  Moreover, the time spent reading and summarizing the documents undoubtedly reduced the time required to prepare for trial.  Finally, given the nature of the trial and the evidence, it was important for Miller to assure

herself that her understanding of the case was complete.  Miller

is entitled to attorney's fees for all of this time.

### iv.  Depositions

Miller seeks compensation for 275.2 hours spent taking and

summarizing depositions.  (Miller Decl. ¶ 6(h).)  Defendants

again challenge Miller's choice to summarize deposition testimony

herself.  (Miller Opp'n at 4.)  As to the depositions, the court

takes a different view.  Either Miller or Belzer was present at

the depositions when they were first taken.  Summaries of

depositions is precisely the kind of work typically assigned to

paralegals.  These hours will be compensated at the paralegal

rate.

### v.  Research

Miller seeks compensation for 227.9 hours of time spent

researching the law.  (Miller Decl. ¶ 6(i).)  She argues that

this is a reasonable amount of time because the case was legally

challenging, fact intensive, and the defendants presented "many

and varied arguments on issues."  (Id.)  Defendants argue that a

substantial amount of time should be cut because: (1) the

plaintiff was unsuccessful on many of his claims; and (2) the

amount of time claimed is excessive in light of the hours spent

in connection with the summary judgment motion and the appeal.

(Miller Opp'n at 4-5.)

Again, the fact that Moreno was not successful on two of his

six claims is unpersuasive given the ultimate outcome of the

case.  However, the total number of hours Miller spent on

research is unreasonable given that she spent over four hundred

additional hours for the summary judgment motion and the appeal.

Although this case was complicated, these hours are somewhat

high.  Miller's research hours will be reduced by 25% to

compensate for this excess.  Miller will be compensated for 171

hours of time instead of 227.9 hours.

### vi.  <u>Summary Judgment Motion</u>

Miller seeks compensation for 135.1 hours of time spent on

the motion for summary judgment.  (Miller Decl. ¶ 6(m).)

Defendants argue that this time should be substantially reduced

because Moreno was "ultimately unsuccessful on most of the issues

raised by summary judgment."  (Miller Opp'n at 5.)  Moreno

replies that Miller's hours should not be reduced because: (1)

she has already voluntarily reduced them; (2) these hours are

reasonable; and (3) the defendants only obtained limited success

on the motion.  (Reply at 7.)  In light of the reduction in

compensable research hours above and Moreno's ultimate success at

trial, Miller is entitled to attorney's fees for all of this

time.

### vii. <u>Appeal</u>

Miller seeks compensation for 269.3 hours of time spent on

the appeal.  (Miller Decl. ¶ 6(n).)  Defendants argue that this

time should be reduced because: (1) the "majority of the issues

were ruled on in defendant's favor"; (2) Miller spent twice the

amount of time on the appeal as she did on the summary judgment

motion from which the appeal was brought; and (3) the number of

hours exceed the total amount of time Miller spent preparing for the first trial. (Miller Opp'n at 5.)

The amount of time for the appeal does appear high in light of the time already spent on legal research and summary judgment. The court considers that an attorney of Miller's experience could prepare the briefing and be ready for oral argument in 180 hours.

### viii. Trial Preparation

Miller seeks compensation for time spent preparing for three trial dates. Miller originally prepared for the case to be tried in July 2002. (9/05/2001 Order at 6.) However, because of an intervening appeal and remand, the trial was delayed until 2005. (12/21/2004 Order at 22.) Miller then prepared for a trial in February 2005. Trial was delayed again until May 2005. (2/18/2005 Minute Order.) Miller combines her preparation time for the first two trial dates and lists that time separately from the time she spent preparing for the May 2005 trial.

Miller seeks compensation for 266.6 hours spent preparing for the first two trial dates and for 340.7 hours spent preparing for the May 2005 trial. (Miller Decl. ¶ 6(p).) Defendants argue that the total amount of time spent on trial preparation is excessive. (Miller Opp'n at 5.) In particular, defendants point to the fact that Miller spent approximately 80 more hours preparing for the third trial than she did for the first two. (Id.)

A seasoned trial lawyer must anticipate intervening appeals and trial delays. If a trial is delayed, she must be able to

draw from her efforts to prepare for the first trial date in order to reduce the time to "get up to speed" for the subsequent trial date.  Miller seeks compensation for over six hundred hours of trial preparation.  Although trial preparation is important, this is excessive.  A reasonable adjustment is to reduce her trial preparation hours for the first two trials by 50%.  Therefore, Miller will be compensated for 133.3 hours spent preparing for the first two trial dates and 340.7 hours spent preparing for the May 2005 trial.

### c.   Belzer Billing

Defendants argue that the following hours billed by Belzer are excessive and should be stricken entirely: (1) 13.8 hours of paralegal time; (2) all 116.0 hours spent attending depositions; (3) all 27.3 hours spent drafting and arguing motions; (4) 33.0 of the hours spent for trial preparation; and (5) 19.1 of the hours billed during trial.  (Belzer Opp'n at 5-10.)

### i.   Paralegal Time

Defendants claim that all paralegal time other than that spent for review and marking of depositions was clerical in nature and therefore should be included in Belzer's overhead.  (Id. at 5.)  After a review of Belzer's paralegal's time sheets, it appears that 15.1 hours were spent on work appropriate for a paralegal and 2.1 hours of work was of the type that should be included in overhead.  (Belzer Decl. Ex. 2.)  Therefore, the number of billable paralegal hours is reduced to 15.1.

### ii.   Deposition Attendance

Defendants claim that it was unreasonable for both Miller and Belzer to attend the same depositions and therefore only the deposing or defending attorney should be compensated.  (Belzer Opp'n at 5.)  Moreno argues that both attorneys should be awarded fees because: (1) the defendants had two attorneys present at several depositions in this case; (2) having two attorneys present ensured that the trial could be conducted even if one attorney could not participate; and (3) this argument is a red herring under existing precedent.  (Reply at 8.)

Moreno's arguments are weak.  That two defense attorneys were present at some of the depositions has little bearing on whether it was compensable for Moreno to have both Belzer and Miller attend depositions.  More importantly, the argument that having both Belzer and Miller present at each deposition would facilitate Moreno's case going forward in the event that one of them could not be present at trial appears disingenuous.  Miller and Belzer bifurcated the trial based on their expertise. Because Miller likely could not have performed the eminent domain portion of the trial without Belzer, and Belzer likely could not have handled the trial alone, Moreno obtained no insurance from having both attorneys attend depositions together.  In fact, Moreno's trial approach actually increased his chance of having to delay trial.  Finally, defendants' argument is not a red herring.  There are cases where courts have refused to fully compensate multiple attorneys attending the same deposition.  See Broom v. Biondi, 17 F.Supp.2d 230, 235-36 (S.D.N.Y 1997); W.C. v.

DeBruyn, 883 F.Supp. 354, 356 (S.D. Ind. 1995); Rateree v. Rocket, 685 F.Supp. 670, 671 (N.D. Ill. 1988).

It is apparent that both Miller and Belzer did not need to attend the same depositions. Therefore, the deposition time billed by the lawyer who was present but did not conduct the deposition or defense will be cut by 75%. The 25% awarded approximates the time the non-participating attorney would have spent reviewing the transcript.

Belzer and Miller were both present at twenty-six of the thirty-two depositions. (Belzer Opp'n at 5-8.) Belzer conducted eight of the depositions, Miller conducted the other eighteen. (Id.) Belzer billed a total of 73.8 hours for the eighteen depositions he attended but did not conduct. (Id.) Therefore, his number of compensable hours shall be reduced by 55.4 hours.

Miller billed a total of 27.3 hours for the eight depositions that she attended but did not conduct. Therefore, her number of compensable hours shall be reduced by 20.5 hours.

iii. Motion Work

Defendants claim that Belzer's bill for 27.3 hours for the summary judgment motion, Moreno's appeal of the summary judgment ruling, and other pre-trial motions should be stricken or reduced because Miller and her staff have already billed over four hundred hours for these matters. (Id. at 8-9.) Because Belzer was responsible for several aspects of this case, his contribution of approximately 5% of the time spent in preparing the pre-trial motion work is reasonable. There will be no

reduction of his hours.

### iv.   Trial Preparation

In his time sheets, Belzer listed 33.0 hours as "trial preparation." (Belzer Decl. Ex. 1.)  Defendants claim that this description is "insufficiently distinct to allow for an award of fees." (Belzer Opp'n at 9.)  The party seeking an award of fees must adequately document the hours worked.  Hensley, 461 U.S. at 433.  However, "[p]laintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended." Id. at 436 n. 12.  Obviously, there is a gray area between stating in "great detail how each minute" was spent and "inadequate" documentation.  Belzer's description falls into that gray area.

Belzer's time sheets indicate that he spent this time preparing for trial.  Although this is a minimal amount of information, it is enough to determine how he expended his time and whether, in light of the circumstances, the amount of time he expended was reasonable.  Belzer was not the lead attorney in this case.  However, he did examine several witnesses and provide expertise on certain aspects of eminent domain law.  This work necessitated some amount of preparation and 33.0 hours is not excessive.  Belzer is awarded fees for 33.0 trial preparation hours.

### v.   Trial Hours

Defendants argue that Belzer's compensable hours during the trial should be reduced by 19.1 hours because he claimed more

hours than Miller.  (Belzer Opp'n at 9.)  This argument is unconvincing.  Belzer claimed 10.0 and 11.5 hours for trial attendance and preparation on May 31 and June 6, 2005.  (<u>Id.</u>)  Miller claimed 7.9 and 9.5 hours for those same dates.  (<u>Id.</u>)  It is reasonable for Belzer to have worked twelve hour days during this trial, even if Miller worked less.  Although Miller's time is instructive, it does not establish what was reasonable for Belzer.

In addition, defendants challenge the 15.0 hours that Belzer spent on June 8, 2005 for attendance at trial and "preparation for closing argument" because Miller delivered the closing argument.  Although it would be unreasonable for Belzer to claim time spent for the closing argument if he made no contribution to it, Miller's closing relied upon arguments and the evidence he developed.  Consequently, the court finds that Belzer contributed to the closing argument, even though Miller delivered it.  Fifteen billable hours in a single day is certainly a high number, but that kind of effort was likely required during the last push before the close of trial.  Belzer is awarded fees for all of the time he spent at trial.

### c.   Relative Number of Hours

Miller documents that she and her staff spent 2,805.5 hours on this case.  (Miller Mot. at 3.)  Belzer documents that he and his staff spent an additional 411.3 hours on this litigation.  (Belzer Decl. Exs. 1, 2.)  Therefore, in total, Moreno's counsel spent 3216.8 hours on this case.  In contrast, defendants assert

that their counsel worked for a total of 1,933.1 hours on this
litigation.  (Miller Opp'n at 6.)  Defendants claim that this
disparity in hours worked is evidence of inaccurate and
unreasonable billing by Miller and Belzer.  (Id.)

Although Moreno's attorneys and staff worked significantly
more hours on this case than did the defendants' attorneys and
staff, that does not necessarily mean that the number of
requested hours are unreasonable.  Importantly, defendants
provide no analysis of what a reasonable difference between the
hours worked by plaintiff's and defense counsel would be for a
case of this nature.  Without such evidence, it is impossible to
tell whether Miller or Belzer deviated unreasonably.
Furthermore, defendants were defeated in this case.  Their
estimate of what was needed to present a winning defense is not
subject to much deference.  Consequently, they have failed to
establish that their hours are a reasonable benchmark.  Comparing
hours in this case provides little insight into the
reasonableness of the number of hours Miller and Belzer spent.

2.  Reasonable Rate

Miller requests compensation at $300 per hour and submitted
a range of compensation rates for her staff.  (Miller Decl. ¶ 4.)
Belzer requests that he be compensated at the rate of $300 per
hour and that his paralegal be compensated at $125 per hour.
(Belzer Decl. ¶ 18.)  However, in Belzer's motion, he uses $75
per hour to calculate his paralegal's fee.  (Belzer Mot. at 16.)
Because $75 per hour is more appropriate for a paralegal, the

1  court establishes that rate for Belzer's paralegal.

2      Defendants challenge Miller's and Belzer's requested $300

3  per hour rate as unreasonable and also challenge several of

4  Miller's staff members' rates as excessive compared to the work

5  they actually did.  (Miller Opp'n at 7, 9-10.)

6          a.   Miller and Belzer

7      Miller has the burden of providing evidence "that the

8  requested rates are in line with those prevailing in the

9  community for similar services by lawyers of reasonably

10 comparable skill, experience and reputation."  Blum v. Stenson,

11 465 U.S. 886, 895 n. 11, 104 S.Ct 1541 (1984).  Miller has been

12 in private practice since 1981.  (Miller Decl. ¶ 2(b).)  Miller's

13 declaration conveys that she is an accomplished attorney with a

14 significant amount of litigation experience.  (Id. ¶¶ 2(a)-(e).)

15 She avers that she typically charges clients between $250 and

16 $400 per hour depending on the circumstances.  (Id. ¶ 4.)  She

17 claims that her rate for civil rights actions is $350.[6]  (Id.)

18     Miller provides declarations from three lawyers who practice

19 in Sacramento: Rhonda Cate Canby ("Canby") of Downey Brand LLP,

20 Michael Johnson ("Johnson") of Union Pacific Railroad, and Larry

21 Winberry ("Winberry"), a sole practitioner.  (Id. Ex. 3, 4, 5.)

22 Canby graduated from law school in 1991 and declares that her

23 billing rate is "$295 for litigation work."  (Id. Ex. 3 ¶ 4.)

24 Canby avers that $300 is a reasonable rate for Miller because of

25

26     [6] Miller does not explain why she is requesting $50 less per
hour in this case.

26

her experience and excellent reputation in the community.  (Id.
Ex. 3 ¶ 6.)   Johnson is an "in-house" lawyer so he does not
usually bill for his time.  (Id. Ex. 4 ¶ 4.)   However, he
declares that when he does bill for his time, he does so at rates
between $250 and $350 per hour.  (Id.)   Johnson states that $300
is a reasonable fee for Miller because of her years of experience
and reputation as a competent civil rights attorney.  (Id. Ex. 4
¶ 5.)   Finally, Winberry states that he graduated from law school
in 1976 and charges $300 to new litigation clients.  (Id. Ex. 5 ¶
4.)   He avers that $300 is a reasonable fee for Miller in this
case because of her experience and ability.  (Id. Ex. 5 ¶ 6.)

Miller also provides evidence that a Sacramento County
Superior Court decided that $350 per hour was a reasonable rate
for "an experienced trial attorney in the field of employment
litigation who exhibited exceptional expertise in his
understanding of the applicable legal principles" in the case.
(Id. Ex. 7.)   Finally, Miller points to Judge England's decision
to award an experienced attorney $300 per hour in the 2003 case
of Curs v. Union Pac. R.R. Co., CIV-S-99-2514 MCE GGH, slip op.
at 7 (E.D. Cal. Aug. 11, 2003) to support her request.  (Id. Ex.
8.)

Defendants argue that $300 is excessive because: (1) Moreno
was "unsuccessful on a number of claims"; (2) it greatly exceeds
(by more than 50%) the rates charged for the other attorneys in
her office; (3) the supporting declarations are not probative;
and (4) defense counsel charges between $125 and $145 per hour.

27

(Miller Opp'n at 7.)  Defendants do not cite any cases where an attorney with Miller's experience was denied a request to be compensated at $300 per hour.

That Moreno was unsuccessful on some of his claims seems immaterial to the reasonableness of Miller's rate.  It is undisputed that Moreno is the prevailing party in this case, and, as discussed above, he obtained excellent results.  That Miller's rate is 50% greater than other attorneys in her office is only probative if they are of comparable skill and experience. Defendants note that one of her attorneys, Lawrence Hensley, has been practicing since 1982 and his billing rate is only $185 per hour.  Without a more detailed comparison of his relative experience and ability as a trial lawyer, it is impossible to determine whether his rate is reasonable.  Similarly, the declarations regarding defense counsel's rates are less than ideal in this case because: (1) they do not allege a similar level of experience or skill; (2) they are not working on a contingency fee basis; (3) they provide no evidence that the hourly rate they charge is reasonable; and (4) they concede that they "are willing to accept substantially less in hourly compensation" because they represent a municipality.  This admission suggests that were they not representing a municipality, they too would have a substantially higher hourly billing rate.

While a rate of $300 might be reasonable for Miller in some cases, the court finds that $250 per hour is the appropriate rate

in this case given the way in which it was managed.  Although she
is an experienced trial attorney, Miller spent much of her time
on this case engaging in activities better suited for a less
experienced lawyer.  For example, she personally participated in
all 32 depositions.  She then summarized the deposition testimony
herself.  She also summarized some 4000 pages of documents
herself.  While it was reasonable to spend time on these tasks,
to charge $300 per hour while doing them seems excessive.  The
high rates that big firm lawyers charge are based on
specialization of labor such that those with the highest rate
only work on those tasks that a junior attorney cannot perform.
After evaluating the time records, the court finds that a rate of
$250/hour is appropriate for both Miller and Belzer.

            b.   Miller's Staff

     Defendants do not challenge the appropriateness of Miller's
billing rates for paralegals and law clerks.  (Miller Opp'n at
9.)  However, they claim that much of the work done by the non-
attorney members of Miller's staff was merely "clerical or
mechanical in nature."  (Id.) Consequently, defendants argue the
time charged for Aaron Hudson, Benjamin Kinne, Michael Rouzer,
Russell Till, and Amy Clark should be significantly reduced or
cut from the fee request entirely.  (Id. at 9-10.)  Defendants
cite no case in which such a reduction was deemed proper, nor do
defendants provide any evidence that the tasks performed by these
individuals were not necessary to the ultimate success of the
litigation.

In her declaration, Miller discusses the work these staff members performed.  (Miller Decl. ¶¶ 4(a)-(j).)  She suggests that they were used whenever possible to minimize the total amount of attorney's fees.  (Id. ¶ 5.)  Miller also cut 25% of the non-attorney hours off of the fee request.  (Id. Ex. A at 16.)  This is a substantial reduction and accounts for any excessive staff charges.  Because Miller worked the majority of the hours spent on this case and these individuals accomplished substantive tasks that contributed to the success of the case, no further reduction is necessary.

Therefore, based on the foregoing analysis, the appropriate lodestar amount for Miller and her staff for their pre-trial, trial, and post-trial work is $428,053.00.  The appropriate lodestar amount for Belzer and his paralegal is $82,707.50.

3.   Adjusting the Lodestar

The Supreme Court has held that establishing the lodestar rate does not "end the inquiry."  Hensley, 461 U.S. at 434.  Instead, the fee may be increased or decreased depending on the circumstances.  Id.  In the Ninth Circuit, however, this adjustment should only be made "in rare cases."  Gates v. Deukmajian, 987 F.2d 1392, 1402 (9th Cir. 1992).  Moreno does not request an increase in the fee award; however, the defendants suggest that a decrease from the lodestar amount is appropriate.

To determine whether a departure from the lodestar amount is warranted, courts look to the factors discussed in Kerr v. Screen Extras Guild, Inc. 526 F.2d 67, 70 (9th Cir. 1975), cert. denied

30

425 U.S. 951 (1976).  The defendants argue that because "a substantial portion of the claims made by plaintiff were ultimately rejected," two <u>Kerr</u> Factors support decreasing Miller's fee award: (1) the novelty and difficulty of the questions involved; and (2) the amount involved and the results obtained.  (Miller Opp'n at 6, 8.)  Moreno achieved excellent results in this case.  No adjustment is called for.

C.   <u>Expenses</u>

In addition to his attorney's fees, Moreno seeks to recover for "ancillary expenses" incurred while conducting the litigation.  Moreno originally requested compensation for the following expenses: (1) internal photocopying; (2) computer indexing; (3) messenger fees; and (4) expert witness fees.  The defendants did not object to the original expense request.

Moreno asks the court to add to the fee motion all charges that the court denied as costs.  The court denied the following charges as costs: (1) non-testifying witness fees; (2) civil appeal filing fee; (3) travel fees; (4) state court filing fee; (5) expense of copying the state court file; (6) fee for serving Broker; (7) Realtime/LiveNote; (8) transferring media; (9) undocumented photograph development; and (10) undocumented photocopies.  The court assumes that the defendants reiterate their challenge to Moreno's request that they pay for these expenses formerly listed as costs.

Moreno "may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a

31

fee paying client." Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotations and citations omitted).  However, these expenses must be reasonable.  Id.; 42 U.S.C. § 1988 (permitting the court to award a reasonable attorney fee to the prevailing party).  The court finds that the following charges are reasonable expenses that would normally be charged to a fee-paying client: (1) internal photocopying; (2) computer indexing; (3) messenger fees; (4) expert witness fees; (5) Realtime/LiveNote expense; and (6) the civil appeal filing fees. Therefore, these charges are recoverable as expenses.

The court finds that the non-testifying witness fees, the fee for serving Broker, and the expense of photocopying the state court case file are not reasonable because there is no showing that these charges aided in the success of the litigation. Finally, the court denies the charges for travel, external photocopying, and developing photographs because they are not documented.

Based on the analysis above, the court awards Moreno $39,680.12 for expenses.

///

///

///

///

///

///

32

III.

Moreno is entitled to recover his costs and a reasonable attorney's fee under 42 U.S.C. § 1988.  For the reasons discussed in this order, Moreno is awarded: (1) $428,053.00 in attorney's fees and $39,680.12 in expenses for work Miller and her staff performed; (2) $20,594.33 in costs; and (3) $82,707.50 in attorney's fees for work Belzer and his paralegal performed.

IT IS SO ORDERED.

Dated: 12/14/2005

DAVID F. LEVI
United States District Judge